**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RICHARD REYNOLDS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 3:21-cv-01064 (SRU) |
| | : | |
| ANGEL QUIROS, ET AL | : | |
| Defendants. | : | October 16, 2023 |

## JOINT TRIAL MEMORANDUM

The parties hereby submit their Joint Trial Memorandum in this matter.[1] The parties reserve

the right to supplement this Joint Trial Memorandum based on further developments in this matter,

though the non-moving party would not be barred from objecting.

### I.    Trial Counsel

*Plaintiff's Counsel*

David N. Rosen
David Rosen & Associates, P.C.
400 Orange Street
New Haven, CT 06511
(203) 787-3513
(203) 789-1605 Fax
CT00196
drosen@davidrosenlaw.com

Kalind Parish
David Rosen & Associates, P.C.
400 Orange Street
New Haven, CT 06511
(858) 401-9182
(203) 789-1605 Fax
kparish@davidrosenlaw.com
Bar admission pending

---

[1] By filing this Joint Trial Memorandum, the Defendants do not waive, and specifically preserve, all defenses they have asserted in this manner, including the plaintiff's failure to exhaust his administrative remedies and that they are shielded by qualified immunity. Plaintiffs likewise do not waive and specifically reserve any rights they may have to assert claims or produce evidence, particularly but not exclusively in response to Defendants' assertions and evidence.

*Defendants' Counsel*

Frank J. Garofalo III
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
Federal Bar #ct30938
Tel.:  (860) 808-5450
Fax:  (860) 808-5591
Email: frank.garofalo@ct.gov

James M. Belforti
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
Tel:  (860) 808-5450
Fax:  (860) 808-5591
Federal Bar No. ct30449
E-Mail:  james.belforti@ct.gov

## II.      Jurisdiction

Plaintiff brings claims pursuant to Title 42 U.S.C. Section 1983and the First and Fourteenth

Amendments. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## III.     Jury/Non-Jury

This is a non-jury trial as decided by this Court (ECF No. 93). Additionally, the Court has

heard evidence on the Motion for a Temporary Restraining Order/Preliminary injunction, and

that evidence is part of the trial record, Fed. R. Civ. P. 65(a)(2).

## IV.      Length of Trial

Plaintiff estimates that trial can be completed in four days, and that his case in chief will

be completed in two-three days. Defendants submit that should the Court deny summary judgment

on exhaustion grounds, the Court should hold an evidentiary hearing in this regard before

proceeding to the merits of the case (Plaintiff disagrees); Defendants anticipate that such a hearing

would require 1-2 days for completion. Thereafter, if a trial on the merits is necessary, the

Defendants estimate that that the trial may require a total of five-seven days for their case, depending on what claims remain in the case at that point.

## V.     Further Proceedings

Argument on Defendants' Motion for Summary Judgment is scheduled on October 20, 2023. The parties are completing last-minute discovery by agreement. Defendants anticipate the necessity for further proceedings on pretrial motions, including but not limited to motions in limine and other motions raising questions of law which should be decided prior to trial, to include preservation of claims related to *inter alia*, qualified immunity.

## VI.    Nature of Case

Plaintiff seeks money damages and injunctive and declaratory relief against all defendants on the following claims:

### A.     First Amendment

Plaintiff claims that his lawsuit in *Reynolds v. Arnone* (*Reynolds I*) was protected speech, and that Defendants took adverse action against him as a result of his bringing and winning his lawsuit. Adverse actions included: placing Plaintiff on High Security status; denying him opportunities for programming and jobs; depriving him of his property; and moving him from MacDougall-Walker C.I. to Garner C.I. Plaintiff claims that as a result of these actions he lost liberty and property and suffered emotional distress and is threatened with further such loss in the future.

Defendants deny any and all wrong doing as to plaintiff's retaliation claims. Defendants deny that any named Defendant took any action to retaliate against the Defendant, and furthermore, they deny that the Plaintiff's filing of *Reynolds I* or the Second Circuit's decision on the appeal of *Reynolds I* had any impact on the decisions to place Plaintiff on High Security Status, restricting

his property upon his transfer out of Northern CI and to the general prison population or his transfer to Garner CI. Several Defendants, including Commissioner Quiros, Director Maiga, Deputy Commissioner Mulligan, and Warden Bowles, were not personally involved in the alleged "adverse actions" in this matter. As to the other Defendants, none were named as Defendants in *Reynolds I* and had no reason or motivation to "retaliate" against the Plaintiff based on the filing of that matter or any decision of the Court or Second Circuit in that matter. Defendants further contend that they did not take any "adverse action" against the Plaintiff as High Security designation, restrictions on personal property, inter-facility transfers, and the limited availability of prison jobs or programming are ordinary incidents of prison life. Furthermore, the Defendants contend that legitimate penological reasons existed for Plaintiff's placement on High Security Status, for confiscating any property Plaintiff possessed outside of the DOC's authorized property matrix upon his transfer to MacDougall-Walker CI, and for transferring him to Garner CI, and accordingly, they cannot be held liable on any claim Plaintiff may advance that such actions were "retaliatory." In any event, the Defendants contend that placing Plaintiff on High Security, in confiscating certain items of his property, and transferring him to Garner CI, were objectively reasonable based on the circumstances then-existing, and it was not "beyond debate" that their conduct was violative of federal law, so they are shielded by the doctrine of qualified immunity.

### B.    Due Process

Plaintiff claims that Defendants deprived him of his liberty by placing him in High Security status with constitutionally insufficient procedures and by violating this Court's order in *Reynolds I*. He also alleges that Defendants deprived him of his property with constitutionally insufficient procedures.

The Defendants deny any and all wrong doing as to plaintiff's procedural due process claims. The Defendants maintain that several defendants were not personally involved in the Plaintiff's alleged denial of a "hearing" to contest High Security Designation, including Commissioner Quiros, Warden Bowles, Deputy Commissioner Mulligan, Director Maiga, Officer Burns, and Captain Salius. In any event, Plaintiff cannot meet the threshold showing required for procedural due process protection because there is no statutory or regulatory interest in Connecticut in a prisoner's security classification, nor would High Security classification constitute an "atypical or significant hardship" when compared to the ordinary incidents of prison life. Moreover, Plaintiff cannot establish that his alleged lack of a "hearing" was the proximate cause of his High Security designation because even if he had a hearing, Plaintiff was not going to renounce his possession of a lighter or screwdriver, and accordingly, the High Security designation would have been upheld. Furthermore, Plaintiff was still afforded an adequate procedure to contest his High Security designation because he had the opportunity to appeal the decision through the use of DOC's Administrative Remedy process. Defendants should also be shielded from qualified immunity on this claim because their alleged conduct was objectively reasonable under the existing circumstances, and it was not "beyond debate" that failing to give a prisoner a hearing to contest a "High Security" status was violative of federal law.

### C.        Equal Protection

Plaintiff claims that Defendants intentionally treated him differently from other similarly-situated inmates with respect to his placement and retention on High Security, confiscation and deprivation of his property, and transfer to Garner C.I.

Defendants deny any and all wrong doing as to plaintiff's equal protection claims. Several Defendants, including Commissioner Quiros, Director Maiga, Deputy Commissioner Mulligan, and Warden Bowles, were not involved in the alleged conduct forming the basis of the equal

protection claims. Moreover, Defendants maintain that because the conduct at issue, including placement on High Security Status and restrictions on personal property, are discretionary decisions made by prison officials and as such, a "class of one" equal protection claim cannot be advanced. Moreover, the Defendants submit that the Plaintiff is not "identical" to any of his alleged comparators. Defendants also maintain that they had a rational basis to place Plaintiff on high security and deny him property upon his transfer out of Northern and to the general prison population. In any event, the Defendants assert that they are shielded by the doctrine of qualified immunity on Plaintiff's equal protection claim on the basis that, under the circumstances, their conduct in placing Plaintiff on High Security status and confiscating certain property items were objectively reasonable, and it is not "beyond debate" that the alleged conduct in placing Plaintiff on High Security status or restricting what property he could possess in his prison cell was violative of federal law.

### D.    Civil Contempt

Plaintiff claims that the Court's order in *Reynolds I* applies to Defendant Quiros, as a named defendant in *Reynolds I*, and to all other Defendants due to their status as employees or agents of the defendants in *Reynolds I*.

Defendants deny any and all wrong doing as to plaintiff's contempt claims. Defendants also maintain that "civil contempt" is not an independent cause of action, and Plaintiff cannot advance a cause of action for "contempt" for an alleged failure to follow an order entered in a prior suit. Moreover, none of the Defendants in this case, with the exception of Commissioner Quiros, were parties in *Reynolds I*, and accordingly, they were not subject to any order of any court and cannot be held in contempt for failing to abide by that order. Further, all Defendants are at least entitled to qualified immunity on any claim for civil contempt as it certainly has never been clearly

established that a litigant can bring a separate, stand-alone cause of action for civil contempt based on the alleged violation of an injunction from another case.

## VII.        Trial by Magistrate Judge

The parties do not agree to a trial by a Magistrate Judge.

## VIII.   List of Witnesses

### *Plaintiff's Anticipated Witnesses*

Plaintiff expects to call some or all of the following witnesses. In addition, he may call other witnesses based on pretrial or trial developments, and he relies on testimony from the TRO hearing.

    A.        Richard Reynolds
              Garner Correctional Institution
              50 Nunnawauk Rd., Newtown, CT 06470

Mr. Reynolds will offer testimony supplementing his testimony at the TRO hearing. The subjects will include the circumstances of his placement on High Security, the lack of review or process his placement received, the confiscation of his property, the fact that other inmates were allowed to keep their property after leaving Northern CI, Defendants' failure to provide him with orientation,  his lack of job and programming opportunities, and the impact on him of Defendants' conduct.

    B.        Rick Bayuk
              85 Great Ring Rd.
              Sandy Hook, CT 06482

Mr. Bayuk is Plaintiff's expert witness on the infeasibility of using the subject screwdriver to defeat handcuffs.

**Defendant's Objection:**

**Defendants maintain that preclusion of Mr. Bayuk's testimony is warranted due to**

**Plaintiff's failure to comply with Fed. R. Civ. P. 26 when disclosing Mr. Bayuk. Defendants reserve the right to further object to Mr. Bayuk's testimony after completing his deposition.**

The following inmates and former inmate will testify based on their availability.

Joseph Silva

DOC Inmate.

Plaintiff requests the defendants' assistance in locating Mr. Silva and in making him and the other inmate witnesses available to testify.

Mr. Silva will testify about the punishment he received for his contraband tickets in March 2021 and his previous discipline for possession of marijuana.

C.      Derrick Taylor

Whereabouts presently unknown.

Mr. Taylor will testify regarding property he was allowed to keep after leaving Northern. According to the DOC, he was released on July 26, 2023.

D.      The following inmates will testify regarding property they were allowed to keep, programming they were allowed to participate in, and jobs they were allowed to have after leaving Northern:

Lazale Ashby
1153 East St.
South Suffield, CT 06080

Jessie Campbell
1153 East St.
South Suffield, CT 06080

Vernon Cowan
1153 East St.
South Suffield, CT 06080

Joseph Todd Rizzo
1153 East St.
South Suffield, CT 06080

Devon Smith
1153 East St.
South Suffield, CT 06080

### *Defendants' Anticipated Witnesses*

Defendants reserves the right to cross-examine each of Plaintiff's witnesses, and further reserves the right to call other witnesses for purposes of rebuttal or impeachment. In addition, the Defendants intend to call the following witnesses in their case-in-chief:

A. Richard Reynolds (party, Plaintiff), Garner Correctional Institution, 50 Nunnawauk Rd, Newtown, CT 06470. In addition to cross-examining and impeaching Plaintiff, specifically pursuant to Fed. R. Evid. 609, Defendant reserves the right to call Plaintiff in the Defendant's case in chief, to testify concerning the facts, events, conditions, and circumstances described in his Complaint or otherwise at issue in this lawsuit.

B. Warden Craig Washington (party, Defendant), Garner Correctional Institution, 50 Nunnawauk Rd, Newtown, CT 06470. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Warden Washington will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including his (Warden Washington's) state of mind as it relates to the above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

C. Warden Roger Bowles (party, Defendant), retired, c/o AAG Frank Garofalo III, 165 Capitol Ave, Hartford, CT 06106. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Warden Bowles will

testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including his (Warden Bowles') state of mind as it relates to the above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

D. Director David Maiga, (party, Defendant), retired, c/o AAG Frank Garofalo III, 165 Capitol Ave, Hartford, CT 06106. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Director Maiga will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including his (Director Maiga's) state of mind as it relates to the above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

E. Director David Snyder. (witness), Department of Correction – Central Office, 24 Wolcott Hill Rd, Wethersfield, CT 06109. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Director Snyder is current Director of Offender Classification and Population Management for the DOC. He will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit.

F. Deputy Commissioner ("DC") William Mulligan, (party, Defendant), Department of Correction – Central Office, 24 Wolcott Hill Rd, Wethersfield, CT 06109. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. DC Mulligan will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including his (DC Mulligan's) state of mind as it relates to the

above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

G. Commissioner Angel Quiros, (party, Defendant), Department of Correction – Central Office, 24 Wolcott Hill Rd, Wethersfield, CT 06109. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Commissioner Quiros will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including his (Commissioner Quiros') state of mind as it relates to the above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

H. Warden Kristine Barone (party, Defendant), retired, c/o AAG Frank Garofalo III, 165 Capitol Ave, Hartford, CT 06106. She will testify to her training, education, and experience in corrections, as well as DOC practices and policies. Warden Barone will testify as to her knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including her (Warden Barone's) state of mind as it relates to the above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

I. Deputy Warden Damian Doran, (party, Defendant) Hartford Correctional Center, 177 Weston Street, Hartford, CT 06120. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Deputy Warden Doran will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including his (Deputy Warden Doran's) state of mind as it relates to the above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

J.  Captain Scott Salius (party, Defendant), retired, c/o AAG Frank Garofalo III, 165 Capitol Ave, Hartford, CT 06106. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Captain Salius will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including his (Captain Salius') state of mind as it relates to the above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

K.  Officer Joshua Burns, (party, Defendant), Department of Correction – Central Office, 24 Wolcott Hill Rd, Wethersfield, CT 06109. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Officer Burns will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, including his (Officer Burns') state of mind as it relates to the above, including to Plaintiff's claims against him and Defendant's defenses to that claim.

L.  Captain Darren Chevalier (witness), retired, c/o AAG Frank Garofalo III, 165 Capitol Ave, Hartford, CT 06106.  He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Captain Chevalier was the supervisory intelligence officer at the time of an investigation into plaintiff's social calls and a suspected conspiracy to convey contraband into Northern. Captain Chevalier will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit.

M.  Lt. Israel Ortiz, (witness), Osborn CI, 335 Bilton Rd, Somers, CT 06071. He will testify to his training, education, and experience in corrections, as well as DOC practices and

policies. Lt. Ortiz led an investigation into plaintiff's social calls and a suspected conspiracy to convey contraband into Northern. Lt. Ortiz will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit.

N. Officer Daniel Eshou, (witness), Cheshire Correctional Institution, 900 Highland Avenue, Cheshire, CT 06410. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Officer Eshou was the officer that did an inventory of Plaintiff's property on March 15, 2021, during which time he found a screwdriver and a lighter. Officer Eshou will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit.

O. Lt. Christopher Migani (witness), retired, c/o AAG Frank Garofalo III, 165 Capitol Ave, Hartford, CT 06106. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. At the relevant time, Lt. Migani was a DOC's liaison to the Federal Bureau of Investigation ("FBI"). Lt. Migani will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit, particularly, an FBI investigation that was launched as to a suspected conspiracy to convey contraband into the facility involving Plaintiff.

P. Captain Sergio Perez, Department of Correction – Central Office, 24 Wolcott Hill Rd, Wethersfield, CT 06109. He will testify to his training, education, and experience in corrections, as well as DOC practices and policies. Captain Perez is assigned to DOC's Security Division, and in this role, Captain Perez led an internal investigation as to a

suspected conspiracy to convey contraband into the facility involving Plaintiff. Captain Perez will testify as to his knowledge concerning the facts, events, conditions, and circumstances described in the Complaint or otherwise at issue in this lawsuit.

Q.  Officer Naddeen McKenzie (witness) (IF NEEDED), MacDougall-Walker Correctional Institution, 1153 East Street South, Suffield, CT 06078. Should an Exhaustion Hearing occur, Officer McKenzie will be called to testify as to her training and experience with the DOC, as well as her knowledge of the administrative remedy process that existed at Northern CI at the relevant time, as well as the storage and maintenance of inmate administrative remedy records. Officer McKenzie is the DOC's Keeper of Records for Inmate Administrative Remedies that were filed at Northern CI, and she will detail her efforts to search for administrative remedies filed by the Plaintiff at Northern, what she found, and how her findings pertain to Plaintiff's efforts to exhaust his administrative remedies.

R.  Correctional Counselor ("CC") Jessica Bennett, (IF NEEDED), MacDougall-Walker Correctional Institution, 1153 East Street South, Suffield, CT 06078. Should an Exhaustion Hearing occur, CC Bennett will be called to testify as to her training and experience with the DOC, as well as her knowledge of the administrative remedy process that existed at MacDougall-Walker CI at the relevant time, as well as the storage and maintenance of inmate administrative remedy records. CC Bennett is the DOC's Keeper of Records for Inmate Administrative Remedies for MacDougall-Walker CI, and she will detail her efforts to search for administrative remedies filed by the Plaintiff at MacDougall-Walker, what she found, and how her findings pertain to Plaintiff's efforts to exhaust his administrative remedies.

S.  Correctional Counselor Trainee ("CCT") Carlos Guaman (witness) (IF NEEDED), Garner CI, Garner Correctional Institution, 50 Nunnawauk Rd, Newtown, CT 06470. Should an Exhaustion Hearing occur, CCT Guaman will be called to testify as to his training and experience with the DOC, as well as his knowledge of the administrative remedy process that existed at Garner CI at the relevant time, as well as the storage and maintenance of inmate administrative remedy records. CCT Guaman is the DOC's Keeper of Records for Inmate Administrative Remedies for Garner CI, and he will detail his efforts to search for administrative remedies filed by the Plaintiff at Garner, what he found, and how his findings pertain to Plaintiff's efforts to exhaust his administrative remedies.

T.  Captain Donald Acus (witness) (IF NEEDED), District 1 Administration, 1153 East Street South, Suffield, CT 06078. Should an Exhaustion Hearing occur, Captain Acus will be called to testify as to his training and experience with the DOC and his knowledge concerning the Administrative Remedies policies that were in place at the relevant time. Captain Acus works at the District 1 Administrator's Office, which investigates and responds to Level 2 reviews of inmates' administrative remedies. By virtue of his position, Captain Acus can access all logged Level 1 and Level 2 grievances filed throughout the DOC, and he will discuss his efforts to find Level 1 and Level 2 administrative remedies filed by the Plaintiff at Garner, what he found, and how his findings pertain to Plaintiff's efforts to exhaust his administrative remedies.

## IX.   Deposition Testimony

Plaintiff will likely introduce some deposition testimony of the Rule 30(b)(6) witnesses. Defendants object to the use of deposition testimony at trial other than as permitted under Fed. R.

Civ. P. 32.

## X.   Exhibits

### *Exhibits that Plaintiff Expects to Offer at Trial*

Plaintiff notes that many exhibits are already in evidence from the temporary restraining order hearing on May 3 and 4, 2022. Pursuant to Fed. R. Civ. P. 65(a)(2). Plaintiff also intends to rely on exhibits submitted by the parties in their motion for summary judgment filings.

> **<u>Defendant's Objection</u>: Defendants reserve Objection to these exhibits. Plaintiff has not adequately defined which exhibits he intends to use; several exhibits submitted in connection with the briefs on Motion for Summary Judgment, particularly affidavits, are inadmissible hearsay.**

Plaintiff also expects to introduce some or all of the following, and in addition such other material as may prove to be relevant at trial:

A.   Defendants' answers to Plaintiff's interrogatories, which were requested on September 8, 2023. Plaintiff has not yet received a response to the interrogatories.

> **<u>Defendant's Objection</u>: Defendants object to the introduction of any of their Interrogatory responses as full exhibits, as they would constitute inadmissible hearsay**.

B.   Video footage of the search of Plaintiff's cell on the morning of March 15, 2021, spanning from one hour before to one hour after the search. Plaintiff requested footage from eight different cameras on September 8, 2023.

> **<u>Defendant's Objection</u>: Defendants reserve the right to object to the entirety of this video footage on the basis of relevance.**

**C.**     The complete disciplinary histories beginning 2013 of the following inmates:

Jossean Crispin (#339978); Natha Greenfield (#292196); Hiram Medero

(#398139); Pedro Nieves (#362909); Richard Reynolds (#219460); and Joseph

Silva (#414978). Plaintiff requested Defendants produce these documents on

September 8, 2023.

> **<u>Defendants Objection</u>: Defendants reserve the right to object to the
> complete disciplinary histories of these inmates on the basis of
> relevance, and moreover, maintain that these documents remain for
> "attorney eyes only" pursuant to the Protective Order entered in this
> matter.**

**D.**     The complete classification decision histories beginning 2013 for the inmates

listed in paragraph C, *supra*. Plaintiff requested Defendants produce these

documents on September 8, 2023.

> **<u>Defendants Objection</u>: Defendants reserve the right to object to the
> complete disciplinary histories of these inmates on the basis of
> relevance, and moreover, maintain that these documents remain for
> "attorney eyes only" pursuant to the Protective Order entered in this
> matter.**

**E.**     The complete special management decision histories beginning 2013 for the

inmates listed in paragraph C, *supra*. Plaintiff requested Defendants produce these

documents on September 8, 2023.

> **<u>Defendants Objection</u>: Defendants reserve the right to object to the
> complete disciplinary histories of these inmates on the basis of**

**relevance, and moreover, maintain that these documents remain for "attorney eyes only" pursuant to the Protective Order entered in this matter.**

**F.**     The High Security review packets prepared by Defendants and the DOC when reviewing Plaintiff's High Security status. Plaintiff requested Defendants produce these documents on September 8, 2023.

> **<u>Defendants Objection</u>: Defendants reserve the right to object to the complete disciplinary histories of these inmates on the basis of relevance, and moreover, maintain that these documents remain for "attorney eyes only" pursuant to the Protective Order entered in this matter.**

**G.**     Two affidavits prepared by Plaintiff to recover the property that is the subject of this lawsuit. Those affidavits were filed in a state court case which was subsequently dismissed: *Reynolds v. Quiros*, Doc. No. HHDCV215069930 (Sep. 7, 2021). Plaintiff provided these affidavits to Defendants in response to their August 11, 2023 request for production on September 8, 2023. Plaintiff will verify the contents of these affidavits during his testimony.

> **<u>Defendants Objection</u>: Defendants object on the basis that affidavits are inadmissible hearsay and deprive them of their right to cross-examine adverse witnesses.**

**H.**     Affidavit prepared by Mr. Jose Jusino, used in Plaintiff's state court replevin case

mentioned in paragraph G, *supra*. Plaintiff provided this affidavit to Defendants

in response to their August 11, 2023 request for production on September 8, 2023.

> **Defendants Objection: Defendants object on the basis that affidavits**
>
> **are inadmissible hearsay and deprive them of their right to cross-**
>
> **examine adverse witnesses.**

**I.**     Administrative Directive 9.4: Restrictive Housing Status – Provisions and

Management Standards, dated June 16, 2016.

**J.**     Administrative Directive 6.10: Inmate Property, dated June 19, 2012.

**K.**     Administrative Directive 6.7: Searches Conducted in Correctional Facilities, dated

June 29, 2018.

**L.**     Master programming schedule at Garner CI.

**M.**    Master programming schedule at MacDougall-Walker CI.

**N.**     Plaintiff's educational programming materials at Garner. Plaintiff is in the process

of furnishing these materials to counsel, and expects them to include course

syllabi, assessments and grades by the instructor, and Plaintiff's writings related

to the courses.

> **Defendants Objection: These materials are yet to be produced;**
>
> **Defendants reserve the right to object to the admissibility of this**
>
> **exhibit.**

**O.**     Plaintiff's intake form at MacDougall-Walker CI.

**P.**     A list of all inmates placed on High Security Status from January 2021 through

January 2023. This document was previously produced by Defendants.

> **Defendants Objection: Defendants reserve the right to object to this list**
>
> **of inmates on the basis of relevance, and moreover, maintain that these**

> documents remain for "attorney eyes only" pursuant to the Protective
> Order entered in this matter.

**Q.**   Lists of all tickets for possession of sexually explicit materials from 2017 through
July 2023 and for possession of contraband from 2017 through July 2023. This
document was previously produced by Defendants.

> **Defendants Objection: Defendants reserve the right to object to this list
> of tickets on the basis of relevance, and moreover, maintain that these
> documents remain for "attorney eyes only" pursuant to the Protective
> Order entered in this matter.**

**R.**   Expert report prepared by Mr. Rick Bayuk regarding the feasibility of using a
two-inch screwdriver to defeat handcuffs.

> **Defendants Objection: Defendants  object to Mr. Bayuk's report as it
> is inadmissible hearsay and it fails to comply with Fed. R. Civ. P. 26.**

### _Exhibits that Plaintiff May Offer at Trial If Need Arises_

**S.**   A Nintendo DS replica, identical to the one in Plaintiff's possession at the time
the DOC provided him with the two-inch screwdriver.

> **Defendants Objection: Defendants would object to this Nintendo being
> a full exhibit, but may be willing to consent to its use as a demonstrative
> exhibit after discussion with plaintiff's counsel and an opportunity to
> inspect this item.**

**T.**   MCTSD Lesson Plan: Searching Techniques.

> **Defendants Objection: Defendants reserve the right to object to this
> lesson plan on the basis of relevance, and moreover, maintain that these**

**documents remain for "attorney eyes only" pursuant to the Protective Order entered in this matter.**

U.   Plaintiff reserves the right to introduce Defendants' pleadings, either formally as exhibits or as material the Court can judicially notice.

> **Defendant's Objection: Defendants object to the introduction of any of their pleadings as full exhibits, as they would constitute inadmissible hearsay.**

V.   List of all lockdowns at Garner CI, Cheshire CI, and MacDougall-Walker CI in 2022.

> **Defendants Objection: Defendants reserve the right to object to this list of lockdowns on the basis of relevance, and moreover, maintain that these documents remain for "attorney eyes only" pursuant to the Protective Order entered in this matter.**

W.   List of all lockdowns in 2021 and 2022, prepared by Plaintiff.

> **Defendants Objection: Defendants reserve the right to object to this list of lockdowns on the basis of relevance, and moreover, maintain that these documents remain for "attorney eyes only" pursuant to the Protective Order entered in this matter.**

## _Exhibits that Defendants Expect to Offer at Trial_

The Defendants reserve the right to utilize any exhibit previously entered at the Preliminary Injunction Hearing / Temporary Restraining Order hearing in this matter.

In addition, Defendants reserve right to submit the following exhibits:

a.   The Incident Report Package for NCI-02-042

b.   The Security Division Investigative File

c.   Northern CI Property Agreements Signed by Richard Reynolds

d.  Disciplinary Report dated Mar. 15, 2021 for Class A Contraband

e.  Disciplinary Report dated Mar. 15 2021 for Conspiracy

f.  Notice of Confiscation of Hard-Drive, Mar. 17, 2021

g.  Disciplinary Report dated Mar. 17, 2021 for Class B Contraband

h.  Disciplinary Report dated Mar. 18, 2021 for Class A Contraband

i.  High Security Placement Decision, Mar. 24, 2021

j.  May and November 2021 High Security Reviews

k.  Plaintiff's January 2022 Special Management Decision Appeal

l.  Garner CI Program List

m.  DOC RT50 Screen

n.  DOC RT60 Screen

   Plaintiff is not familiar with this document.  If there is some problem, the parties will bring

   it to the Court's attention.

o.  DOC A.D. 9.5 (Attachment B)

p.  DOC A.D. 6.10 (in effect as of March 2021)

q.  Attachment C to A.D. 6.10 – Male Property Matrix

r.  DOC A.D. 9.4

s.  IF NEEDED: Northern Grievance Log for Fiscal Year 2021

t.  IF NEEDED: Plaintiff's March 25 "Retaliation" Grievance

   Plaintiff agrees that this and the following exhibits re grievances are admissible, and he

   may offer them.

u.  IF NEEDED: Plaintiff's March 25 "Property" Grievance

v.  MWCI Grievance Logs for Fiscal Years 2021 and 2022

w.  IF NEEDED: Plaintiff's May 19th 2021 Level 2 Appeal (property)

x.  IF NEEDED: Plaintiff's May 25th Level 1 Grievance and June 30th Appeal (property)

y.  IF NEEDED: Garner Grievance Logs from 2022 to Present

### *Exhibits that Defendants May offer at Trial if Need Arises*

The Defendants reserve the right to identify and disclose rebuttal testimony and/or exhibits if required based on the evidence and testimony submitted during the Plaintiff's case-in-chief.

**XI.  Anticipated Evidentiary Problems**

None Plaintiff is aware of. Defendants intend to file a Motions in Limine to preclude Plaintiff from calling Rick Bayuk as an expert witness. Defendants reserve the right to file other Motions in Limine, if need arises, prior to or during trial.

**XII.    Stipulations of Fact and Law**

1. The plaintiff, Richard Reynolds, is, and was at all pertinent times, a sentenced prisoner confined within the Connecticut Department of Correction ("DOC").

2. The defendant, Angel Quiros, is the Commissioner of the DOC, and at all relevant times, he was acting in this capacity.

3. The defendant, William Mulligan, is, and was at all pertinent times, acting in his capacity as the Deputy Commissioner of the DOC.

4. The defendant, Kristine Barone, was, at all pertinent times, acting in her capacity as the Warden of MacDougall-Walker Correctional Institution ("MWCI").

5. The defendant, Damian Doran, was, at all pertinent times, acting in his capacity as the Deputy Warden at MWCI.

6. The defendant, Scott Salius, was, at all pertinent times, acting in his capacity as a Captain at MWCI.

7. The defendant, David Maiga, was, at all pertinent times, acting in his capacity as the Director of Offender Classification and Population Management ("OCPM") for the DOC.

8. The defendant, Craig Washington, was, at all pertinent times, acting in his capacity as a Deputy Warden at Northern Correctional Institution ("Northern") and/or as Warden at Garner Correctional Institution ("Garner").

9. The defendant, Roger Bowles, was, at all pertinent times, acting in his capacity as the Warden at Northern.

10. The defendant, Joshua Burns, was at all pertinent times acting in his capacity as the property officer at MWCI.

11. The defendant, Angel Quiros, was a named defendant in *Reynolds v. Arnone*, No. 3:13-cv-1465. (*Reynolds I*).

24

12. Defendants William Mulligan, Warden Washington, Warden Bowles, Director Maiga, Warden Barone, Deputy Warden Doran, Captain Salius and Officer Burns were not named defendants in *Reynolds I.*

13. From February 2, 2021 through March 25, 2021, the plaintiff was confined at Northern CI.

14. On March 15, 2021, Officer Ortiz issued the Plaintiff a "Class A" ticket for conspiring to convey marijuana and an external hard drive into Northern.

15. The "conspiracy" ticket was based on information gathered by Officer Ortiz in his investigation that began on February 26, 2021.

16. From his investigation and review of social calls made by the Plaintiff, Officer Ortiz concluded Plaintiff was plotting to obtain a hard drive and edible marijuana using multiple parties to acquire and ship the items.

17. Plaintiff was then placed in administrative detention on March 15, 2021 in connection with the conspiracy ticket.

18. Plaintiff ultimately pleaded guilty to the conspiracy ticket on March 15, 2021

19. On March 15, 2021, Officer Eshou conducted an inventory of Plaintiff's property and amongst the Plaintiff's property, Officer Eshou found a lighter wrapped in a plastic glove, which was concealed inside of a bottle of baby powder, and a Philips screwdriver, which was found inside a white box.

20. Officer Eshou wrote a Class A contraband disciplinary report for the Plaintiff's possession of a lighter and a screwdriver on March 15, 2021.

21. DOC defines the items that are considered "Class A" and "Class B" contraband in Attachment B to Administrative Directive 9.5.

22. Plaintiff pleaded guilty to the Class A contraband ticket on March 16, 2021.

23. On March 16, 2021, in the course of his investigation, Officer Ortiz reviewed a call from Inmate Joseph Silva.

24. On March 16, 2021, Mr. Silva was placed in administrative detention pending the adjudication of a class A Disciplinary Report for "Contraband (Conspiracy)."

25. On March 17, 2021, while Officer Ortiz was inventorying Mr. Reynold's property, he found a brown bag containing what appeared to be an excessive amount of medication.

26. Officer Ortiz provided the brown paper bag to medical staff to verify its contents.

27. Medical staff verified that the medication was Keep on Person ("KOP") medication and was in excess of amounts that Plaintiff was authorized to have.

28. Officer Ortiz issued Plaintiff a Class B contraband ticket for possession of excessive amounts of medication on March 18, 2021.

29. Plaintiff pleaded guilty to this Class B contraband ticket for excessive medication.

30. Plaintiff was issued a Class A Contraband ticket on March 18, 2021, for possession of sexually explicit material.

31. Plaintiff pleaded guilty to this Class A contraband ticket for possession of sexually explicit materials.

32. By correspondence dated March 19, 2021, Defendant Washington, who was the Acting Warden of Northern at that time, recommended the plaintiff for High Security placement pursuant to DOC Administrative Directive No. 9.4.

33. On March 24, 2021, Defendant Maiga sent a letter addressed to Defendant Bowles, which states, *inter alia*, "[p]lease hold a Classification Hearing to inform him of this designation."

34. High Security is a security designation used within the DOC to provide for increased supervision of inmates who pose a threat to the safety and security of the facility, staff, inmates or the public.

35. The management of inmates placed on High Security status are outlined in DOC Administrative Directive 9.4.

36. After the initial designation, High Security reviews of Plaintiff pursuant to Administrative Directive No. 9.4 were conducted on May 26, 2021, November 30, 2021, and May 24, 2022.

37. While at Northern, Mr. Reynolds was permitted to obtain property that was not otherwise on DOC's authorized property matrix, including among other things an X-Box gaming console, video games, and a digital convertor box.

38. The plaintiff was transferred from MWCI to Garner CI in February 2022.

39. Jose Jusino, Terry Johnson, Devon Smith, Kevin Harris, and Joseph Todd Rizzo were not on High Security status from the year 2021 until the present day.

40. Since his transfer to Garner in February 2022, the plaintiff has not filed any grievances.


THE PLAINTIFF


By /s/ David N. Rosen
David N. Rosen, CT 00196
David Rosen & Associates, P.C.
400 Orange Street
New Haven, CT 06511
(203) 787-3513
(203) 789-1605 Fax
drosen@davidrosenlaw.com